UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT BUTTERWORTH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WESTON RACQUET CLUB, INC. ) <br> and 40 LOVE, INC., ) <br> ) <br> Defendants. ) <br> _____) <br> ) <br> WESTON RACQUET CLUB, INC. ) <br> ) <br> Plaintiff-in-Counterclaim, ) <br> ) <br> v. ) <br> ) <br> ROBERT BUTTERWORTH, ) <br> ) <br> Defendant-in-Counterclaim, ) <br> _____) | Civil Action No. 04-10425-MEL |

## ANSWER AND COUNTERCLAIM

### ANSWER

Defendants Weston Racquet Club, Inc. ("WRC") and 40 Love, Inc. answer the Complaint of plaintiff Robert Butterworth in this matter as follows:

**FIRST DEFENSE**

For their first defense, defendants respond to the numbered paragraphs of the Complaint as follows:

1.  Defendants lack sufficient knowledge and information to admit or deny the allegations of paragraph 1.

B0352687v1

2. Defendants admit that WRC is a corporation having a principal place of business at 132 West Street, Waltham, Massachusetts, admit that WRC operates a tennis facility, and otherwise deny the allegations of paragraph 2.

3. Denied. Throughout this Answer, "WRC" refers to Weston Racquet Club, Inc. only, and does not include 40 Love, Inc. or any other person or entity.

4. Defendants admit that WRC operates a tennis facility and otherwise deny the allegations of paragraph 4.

5. Defendants admit that in or about December 2001, Butterworth began working for WRC as a Resident Tennis Professional and otherwise deny the allegations of paragraph 2.

6. Paragraph 6 states a legal conclusion to which no response is required. To the extent a response is required, defendants deny the allegations of paragraph 6.

7. Defendants admit that Butterworth was responsible for, among other things teaching tennis lessons and evaluating tennis players, admit that he also performed off-court work, and otherwise deny the allegations of paragraph 7.

8. Defendants admit that Butterworth's compensation varied, depending upon what type of work he did and/or how much revenue generated for WRC, and otherwise deny the allegations of paragraph 8.

9. Denied.

10. Defendants admit that WRC did not pay Butterworth at a premium rate of pay for hours worked in excess of 40 in a work week, and otherwise deny the allegations of paragraph 10.

11. Denied.

12. Defendants repeat their responses to the preceding paragraphs as though their responses were set forth herein.

13. Paragraph 13 states a legal conclusion to which no response is required. To the extent a response is required, defendants deny the allegations of paragraph 13.

14. Paragraph 14 states a legal conclusion to which no response is required. To the extent a response is required, defendants deny the allegations of paragraph 14.

15. Paragraph 15 states a legal conclusion to which no response is required. To the extent a response is required, defendants deny the allegations of paragraph 15.

16. Denied.

17. Denied.

18. Denied.

19. Defendants repeat their responses to the preceding paragraphs as though their responses were set forth herein.

20. Paragraph 20 states a legal conclusion to which no response is required. To the extent a response is required, defendants deny the allegations of paragraph 20.

21. Denied.

22. Denied.

23. Denied.

**SECOND DEFENSE**

WRC is a retail or service establishment. Butterworth's pay was at all times more than one-and-a-half times the federal minimum wage. More than half of Butterworth's compensation for a representative period of not less than a month during the relevant times represented commissions on goods or services. Accordingly, Butterworth's Fair Labor Standards Act claim is barred by 29 U.S.C. section 207(i).

**THIRD DEFENSE**

WRC is a recreational establishment and its receipts for the low six months of each relevant calendar year were not more than 1/3 of its receipts for the other six months of each such year. Accordingly, WRC is exempt from the overtime requirements of the Fair Labor Standards Act pursuant to 29 U.S.C. section 213(a)(3).

**FOURTH DEFENSE**

Butterworth provided services to WRC in a bona fide professional capacity. Accordingly, Butterworth's claim under the Fair Labor Standards Act is barred by 29 U.S.C. section 213(a)(1) and his claim under Massachusetts General Laws c. 151, section 1A is barred by c. 151, section 1A(3).

**FIFTH DEFENSE**

Butterworth's claims are barred in part by the applicable statutes of limitation.

**SIXTH DEFENSE**

WRC believed in good faith that Butterworth's compensation arrangements did not violate federal or Massachusetts law. Accordingly, Butterworth is not entitled to any liquidated or multiple damages.

**SEVENTH DEFENSE**

The complaint fails to state a claim against either defendant upon which relief can be granted.

**EIGHTH DEFENSE**

Defendant 40 Love, Inc. was never Butterworth's employer and was never obligated to pay Butterworth any overtime compensation or any other compensation whatsoever. To the extent 40 Love, Inc. were ever found to be Butterworth's employer or found to have any

obligation to pay Butterworth any form of compensation, 40 Love, Inc., asserts all applicable defenses asserted by WRC herein.

WHEREFORE, Defendants request that Butterworth recover nothing against either of them, that his Complaint be dismissed with prejudice, and that each of them be awarded their costs in this matter.

## COUNTERCLAIM OF WESTON RACQUET CLUB, INC.

By way of a counterclaim, Weston Racquet Club, Inc. states as follows:

### FACTS

1. Counterclaimant, Weston Racquet Club, Inc. ("WRC"), is a corporation having a usual place of business at 132 West Street, Waltham, Massachusetts.

2. Defendant-in-counterclaim, Robert Butterworth ("Butterworth"), has alleged in his Complaint in this action that he is a resident of 4 Parramatta Road, Beverly, Massachusetts.

3. WRC operates a tennis facility where club members, their guests, and members of the public can play tennis and receive tennis instruction.

4. From on or about December 7, 2001 to on or about July 22, 2003, Butterworth worked at WRC as a Tennis Professional. Throughout that period, Butterworth provided tennis lessons at WRC.

5. To assist Butterworth in arranging and scheduling his lessons, WRC entrusted him with confidential information, including a database of the home addresses and telephone numbers of WRC's members. In an agreement he signed at the beginning of his work for WRC, Butterworth promised not to use or disclose any of the confidential information entrusted to him. A copy of the agreement is Attachment A hereto.

6. It was important to WRC to treat the tennis players who received lessons at WRC with respect, both as a matter of business philosophy, and to maximize the chances that the players would join or renew their membership and/or continue to receive lessons at WRC. Butterworth understood the importance to WRC of treating the tennis players he was instructing with respect.

7. Nevertheless, during his work at WRC, Butterworth damaged WRC's business by habitually, on dozens of separate occasions, abusing the adult and child tennis players he was supposed to be teaching. For example, Butterworth told children they were stupid or lazy, falsely accused a member of stealing tennis balls, and verbally abused dozens of his instructees.

8. In 2003, Butterworth made inappropriate sexual and racial comments during a lesson to an African-American, female member named Dorothy Andrews. As a result, Andrews stopped taking lessons from him. Butterworth subsequently telephoned Andrews at her home at about 11:00 p.m. and told her that he missed her. When Andrews later found herself unexpectedly on the same court as Butterworth, he stopped play to yell at her about her supposedly poor play in front of five other members, causing Andrews to walk off the court in the middle of a clinic.

9. While still working at WRC, Butterworth told at least one member that WRC's upper management was incompetent and advised her to look for another club to join.

10. On or about July 22, 2003, WRC terminated its relationship with Butterworth.

11. After Butterworth left WRC, he used the member addresses and telephone numbers with which WRC had entrusted him to call WRC members. In his calls, Butterworth disparaged WRC and urged WRC's members to switch to a competitive tennis facility.

B0352687v1

12. On or about August 1, 2003, WRC's counsel wrote to Butterworth advising him that his solicitation of WRC members was a violation of his confidentiality agreement. Butterworth nevertheless continued the solicitations.

13. Butterworth's abuse of the players he was supposed to be teaching, improper solicitation of WRC members, and disparagement of WRC has damaged WRC's reputation and good will and has cost WRC revenues in the forms of membership fees, court rental fees and tennis lesson charges.

## COUNT I
## BREACH OF CONFIDENTIALITY AGREEMENT

14. WRC restates and realleges paragraphs 1 - 13 of its Counterclaim, as if fully set forth herein.

15. The December 7, 2001 Confidentiality Agreement between WRC and Butterworth is a legally binding contract.

16. Butterworth breached the Confidentiality Agreement by using, copying, removing, and disclosing WRC's confidential information for his own benefit and the benefit of parties other than WRC.

17. WRC has suffered monetary damages as a result of Butterworth's breach of the Confidentiality Agreement, in an amount to be proven at trial.

## COUNT II
## TORTIOUS INTERFERENCE WITH CONTRACTUAL
## AND/OR ADVANTAGEOUS RELATIONS

18. WRC restates and realleges paragraphs 1 – 17 of its Counterclaim, as if fully set forth herein.

B0352687v1

19. WRC had contractual and/or advantageous relations with its members and with other tennis players who used its facilities and/or purchased its services.

20. Butterworth knew that WRC had contractual and/or advantageous relations with its members and with other tennis players who used its facilities and/or purchased its services.

21. By abusing his position as Tennis Professional and misusing confidential information in violation of a confidentiality agreement, as described above, Butterworth interfered with these contractual and/or advantageous relations, with improper motive and using improper means.

22. As a result of Butterworth's tortious interference with its relationships with its members and other customers, WRC has suffered monetary damages in an amount to be proven at trial.

## COUNT III
## BREACH OF DUTY OF LOYALTY

23. WRC restates and realleges paragraphs 1 – 22 of its Counterclaim, as it fully set forth herein.

24. As a Tennis Professional at WRC, Butterworth owed WRC a duty of loyalty.

25. By the conduct described above, Butterworth breached his duty of loyalty to WRC.

26. WRC has suffered monetary damages as a result of Butterworth's breach of his duty of loyalty, in an amount to be proven at trial.

B0352687v1

WHEREFORE, WRC demands judgment against Butterworth and asks the Court to award it compensatory damages, costs, and such other and further relief as the Court may deem just and proper.

Respectfully submitted,

DEFENDANT AND COUNTERCLAIMANT WESTON RACQUET CLUB, INC. AND DEFENDANT 40 LOVE, INC.

By their attorney,

*/s/ Patrick J. Bannon*

Patrick J. Bannon, Esq. BBO #635523
Gadsby Hannah LLP
225 Franklin Street
Boston, MA 02110
(617) 345-7000

Date: March 8, 2004

## CERTIFICATE OF SERVICE

I, Patrick J. Bannon, served the foregoing Answer and Counterclaim via first class mail to:

Richard D. Glovsky
Kristin M. Knuuttila
Prince, Lobel, Glovsky & Tye, LLP
585 Commercial Street
Boston, MA 02109

_____
Patrick J. Bannon

DATED: March 8, 2004